PEOPLE ex rel. BRADY v. MOSS et al.

(Supreme Court, Appellate Division, First Department.    March 17, 1899.)

POLICEMEN—DISCHARGE FOR DRUNKENNESS—EVIDENCE.

> A policeman complained of sickness, and was excused. He and his wife testified that he went home, and took some quinine and whisky, at her request, in quantities insufficient to cause intoxication, and that she was ill, and sent him to a drug store. He testified that his sickness caused him to faint before reaching the drug store. A person, who saw him before he fell, testified that he was walking steadily, and that his face was pale, and that brandy was administered to him after he fell. His breath smelled of liquor, and he acted like a drunken man. He was taken before a magistrate and fined for drunkenness; but the magistrate professed himself doubtful about the case, and imposed the lightest fine possible, and expressed his willingness to remit it. *Held* insufficient to sustain a discharge from the force on the ground that he was so much under the influence of liquor as to be unfit for duty.
>
> McLaughlin and Rumsey, JJ., dissenting.

Certiorari on the relation of Joseph E. Brady to review the action of Frank Moss and others, commissioners, in dismissing relator from the police force of New York City.    Relator reinstated.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Louis J. Grant, for relator.

Terance Parley, for respondents.

BARRETT, J.    The charge against the relator was that "at the Twentieth precinct station house, No. 434 West Thirty-Seventh street, at 2 p. m., February 18, 1897, [he] was so much under the influence of liquor as to be unfit for duty."    He was found unconscious on this day in front of No. 219 West Fortieth street, and taken to the station house named in the charge.    He remained there for nearly three hours.    From the station house he was taken to the Second district court, where he was fined one dollar.    The testimony against the relator shows that he was unconscious, or partially so, that his breath smelled of liquor, and that he acted like a man who was drunk to ·stupefaction.    On the other hand, it appears that he complained of being unwell on the morning in question, and was excused from roll call.    It was his off day, and he went home.    The relator and his wife both testify that she advised him to take some quinine and whisky, and that he did so.    His wife was then sick in bed, and she asked him to go to a druggist's to get her some medicine.    He did not want to go, because of his own illness; but, as there was no one else to send, he finally started out upon this errand.    The druggist's shop was at the corner of Broadway and Forty-First street.    On the way he fainted.    He says that this was due to his sickness, and that he had not previously taken enough whisky to affect him.    He is corroborated as to the occurrence on the street by Lemmon, to all appearance an absolutely disinterested witness.    The latter says he met the relator on West Fortieth street; that he was very pale, but walked steadily, and showed no sign of intoxication; that just as they passed each other the relator collapsed; and that he (Lemmon)

got a tumblerful of brandy and poured it down the relator's throat. The manager of the hotel where the brandy was obtained corroborated Lemmon as to its procurement. Upon this evidence, the relator fairly acquitted himself of the charge made against him. He certainly cannot be held to be in fault for the brandy which he thus swallowed while unconscious. People v. French, 119 N. Y. 504, 23 N. E. 1061. Consequently the sole basis for the charge against him was the quinine and whisky which he took at home. But if the relator, even without a physician's direction, in good faith took a moderate dose of quinine, mixęd with whisky, for his ailment, he was guilty of no offense justifying his dismissal. According to his own testimony, corroborated by that of his wife, this is all that he did, and there is nothing to contradict or impeach him on that head. As to the brandy, and his condition on the street, he is, as we have seen, directly corroborated by Lemmon, who says that his face was pale, instead of being flushed, and that he walked steadily. If his collapse had been due to liquor, his gait and whole demeanor on the street would have shown unmistakably the fact of his intoxication. The testimony against the relator is perfectly compatible with the evidence in his favor. Because he was unconscious or stupefied, and his breath smelled of liquor, the witnesses for the respondents not unnaturally thought that it was a case of voluntary intoxication. But the uncontradicted and unimpeached evidence in his behalf shows that he fainted from sickness, and that he had not voluntarily and consciously drunk such a quantity of liquor as could intoxicate him or unfit him for duty. The defense here made is a common one in this class of cases, and invites careful scrutiny, but still it must not be disregarded when it is fully and fairly established.

The proceedings before the magistrate cannot in any way bar or prejudice the relator. Whatever weight might be attached to the mere fact of the fine is balanced by evidence that the magistrate professed himself as doubtful about the case, that he imposed the lightest fine possible, and that he expressed his willingness to remit it.

The proceedings should be annulled, with $50 costs and disbursements, and the relator reinstated. All concur, except McLAUGHLIN and RUMSEY, JJ., dissenting.

McLAUGHLIN, J. (dissenting). The relator was charged with conduct unbecoming an officer. The specifications were that he, at a time and place named, was so much under the influence of liquor as to be unfit for duty, and that he was arraigned before a police magistrate, charged with intoxication, and tried and convicted of that offense. Upon this charge and these specifications the relator was tried by the police commissioners, and after such trial duly had, and upon evidence legally taken, he was found guilty, and dismissed from the force. The relator assails the finding of the commissioners upon the ground that there was no evidence to support the finding, and that it was against the weight of evidence. After a careful consideration of the record before us, I am satisfied that the finding of the commissioners was correct. Upon the hearing before them, it ap-

peared from the testimony offered on the part of the respondents that the relator was found by a police officer, shortly after 11 o'clock a. m., lying on the front stoop of a building on Fortieth street, in an unconscious or semiunconscious condition; that he was taken by the officer to the police station, and there examined by the police surgeon for the purpose of determining whether "it was a hospital case or not"; that the police surgeon thoroughly examined the relator, and found that he was suffering from intoxication, and nothing else; that the relator remained in the station house between two and three hours, at the expiration of which time he regained consciousness, and so far recovered from his stupor that he was arrested, taken before a magistrate, charged with intoxication, and by the magistrate tried, convicted, and fined for that offense. The testimony thus given by the respondents, tending to prove the foregoing facts, was not disputed by the relator, but, instead, he sought to establish facts which would explain his physical condition, as well as his conviction by the magistrate. From his testimony (and he was corroborated in some respects by other witnesses) it appeared that, when he left his post of duty on the morning in question, he complained of not feeling well, and in response to a suggestion made by a brother officer, that he go upon the sick list, replied that he had 24 hours off, and thought "he could fix up in that time"; that he did not report to the police surgeon, or consult a physician, but went to his home, and, at the suggestion of his wife, took some quinine and whisky, and then, at her request, started to go to a drug store, and before reaching there collapsed in the street; that he had no recollection of what occurred thereafter, until he came to in the station house. It did not appear from his testimony, or any offered in his behalf, how much quinine and whisky he took, or when he took it, or what time it was when he left his home and started for the drug store, or how far he had progressed on his journey when he collapsed. Neither did it appear where he was from the time he left his post in the morning until he was taken by his brother officer to the station house, further than that he went home, and then started for the drug store. It did appear from the testimony of other witnesses that he was seen to fall in the street, and that he was carried to and placed upon the stoop where the officer found him; and while he was upon the stoop, one witness testified, he gave him some brandy. As to the conviction before the police magistrate, the relator testified that the magistrate expressed himself as doubtful about the case, and for that reason imposed a small fine, which he either then or thereafter expressed a willingness to remit. The magistrate was, however, not produced, and the only testimony bearing upon this subject was that given by the relator himself; and it will be observed that he had previously testified before the commissioners that he had no personal conversation with the magistrate. But it was not of the slightest importance whether or not the magistrate had expressed an opinion as to the merits of the conviction. The fact remained that the relator had been charged with, and convicted of, the offense of intoxication; and he, so far as appeared, was entirely satisfied with the justice of the conviction, because at the time of the hearing before the commission-

ers he had not appealed from it, or complained in any way of the fine imposed.    The conviction for intoxication was presented to, and considered by, the commissioners; and this of itself was sufficient to justify the conclusion reached by them.    It was not necessary, and they were not required, to try the question of intoxication de novo. But, independent of the conviction, the other evidence was sufficient to sustain the finding that the relator was at the time intoxicated. The members of the police department in a great city like New York are charged with, and responsible for, the maintenance of law and order.    They are the guardians of the public peace. · It is their duty to protect persons and property, and to prevent violations of law. To insure a proper discharge of these duties, it is essential that the moral standard of the force should be high, and strict discipline maintained; and, to this end, the statute, while it has not given the police commissioners power to dismiss an officer at will, without a , charge being made and a trial had, nevertheless has vested them, to a certain extent, at least, with discretionary powers, both as to the method of procedure and the determination of charges of this character, and their conclusion ought not to be lightly interfered with by the courts.    People v. Board of Police Com'rs, 93 N. Y. 97.    We have heretofore held that the judgment of the commissioners "has all the force of the verdict of a jury, and should not be disturbed, unless it is so overwhelmingly against the weight of evidence as to justify the inference of passion, prejudice, partiality, or clear mistake" (People v. Martin, 5 App. Div. 217, 39 N. Y. Supp. 74), and no such inference can fairly be deduced from the record before us.    For these reasons the writ should be dismissed, and the action of the commissioners affirmed, with costs.

RUMSEY, J., concurring.